No. 21-9001

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Harvey Miguel Robinson,

*Appellant*,

v.

Secretary, Pennsylvania Department of Corrections;
Superintendent, Phoenix SCI;
Superintendent, Rockview SCI;
Lehigh County District Attorney,

*Appellees.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

## REPLY IN SUPPORT OF
## INITIAL BRIEF FOR APPELLANT

Eric Montroy
Eric Motylinski
Federal Community Defender Office
  for the Eastern District of Pennsylvania
The Curtis, Suite 545 West
601 Walnut Street
Philadelphia, PA  19106
(215) 928–0520

Dated: August 30, 2023         *Counsel for Appellant Harvey Miguel Robinson*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i
TABLE OF AUTHORITIES ......................................................................................... ii
ARGUMENT .................................................................................................................. 1

# TABLE OF AUTHORITIES

**Federal Cases**

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ............................................................. 1
*Carpenter v. Vaughn*, 296 F.3d 138 (3d Cir. 2002) .......................................... 1–2
*Francis v. Franklin*, 471 U.S. 307 (1985) ................................................................ 3
*Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) ...................................................... 5
*Kelly v. South Carolina*, 534 U.S. 246 (2002) ....................................................... 1
*Richmond v. Polk*, 375 F.3d 309 (4th Cir. 2004) ............................................. 1, 4
*Simmons v. South Carolina*, 512 U.S. 154 (1994) ................................................ 1

## ARGUMENT

The Commonwealth does not contest that the state-court opinion denying relief was based on an unreasonable application of *Simmons v. South Carolina*, 512 U.S. 154 (1994), and *Kelly v. South Carolina*, 534 U.S. 246 (2002), and was unreasonable in light of the record. The Commonwealth argues instead that the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), but, as explained below, its harmlessness argument fails for several reasons.

*First*, the Commonwealth argues that because this was a highly aggravated case (a fact Mr. Robinson does not contest), the error was harmless. ECF No. 47 at 8. The Commonwealth's argument might make sense in a situation where there was no jury question: *the crimes were so aggravated*, the argument goes, *the jury would have sentenced him to death in any case. See Richmond v. Polk*, 375 F.3d 309, 335 (4th Cir. 2004) (where there was no jury question, finding *Simmons* error harmless because crime was so aggravated). But here, the jury *heard* all the evidence in aggravation and the Commonwealth's future-dangerousness-emphasizing closing argument, *absorbed* all that evidence and argument, and *still* asked about the meaning of a life sentence. (And as the Commonwealth acknowledges, ECF No. 47 at 5, the jury found three mitigating circumstances.) Having heard all the aggravating evidence and argument, the jury wanted to know if parole was a possibility if it sentenced Mr. Robinson to life. *See Carpenter v. Vaughn*, 296 F.3d 138, 157 (3d Cir. 2002) (finding error in trial court's misleading response to jury question concerning parole: "It is apparent that the jury's concern centered on the availability of

a sentence of life imprisonment without parole.").

Mr. Robinson's prosecutor sent a future-dangerousness message throughout his evidence, his cross-examination, and his argument. The jury's question shows it got the message and was worried he would be paroled.

Essentially, the question the Fourth Circuit asked in *Richmond*—and the question any court would ask were it to conduct a harmlessness analysis for a *Simmons* violation—is whether the crime is so aggravated that the jury would necessarily sentence the defendant to death even if it had received a *Simmons* instruction. But here, that question does not exist because the jury already answered it: having digested all that evidence and argument in aggravation, the jury still wanted to know if Mr. Robinson might one day be paroled if it sentenced him to life (and in Pennsylvania, the refusal of only one juror renders a death sentence impossible). Therefore, this Court cannot say that the error was harmless.

*Second*, the Commonwealth refers to what it calls "two isolated statements" ("I don't see how I can guarantee—that's the present law. But what if the legislature changes the law? I can't guarantee that. That's the way the law is now." "Who knows two years from now if they'll change the law. I can't tell you." (209a–210a)). ECF No. 47 at 8. The word "isolated" suggests that they were hidden or not noteworthy. But that could not be further from the truth. The statements could not have been more prominent. They occurred in direct response to a jury question about the meaning of a life sentence, a question asked *after* the jury had absorbed all the Commonwealth's evidence

and argument in aggravation. The erroneous and misleading statements could not have been more conspicuous.

*Third*, the Commonwealth argues that the trial court's erroneous statements must be considered harmless when "[a]rrayed against the vast body of evidence presented over the course of this trial." ECF No. 47 at 8. But this argument refutes itself: the jury heard "the vast body of evidence presented over the course of this trial" and *still expressed concern as to whether Mr. Robinson could be paroled if he were sentenced to life.*

*Fourth*, the Commonwealth argues that the trial court's reformulated response cured any error. ECF No. 47 at 8–9 ("I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." 211a.) But this statement could not have cured the absence of a proper *Simmons* instruction. It is feeble and was offered reluctantly, suggesting the court doubted it was true. The Commonwealth's argument might make more sense if the court's statement were actually clear and forceful, e.g., "You must disregard what I just said, which was wrong. There cannot be any parole." Such a statement would at least have the virtues of (1) clarifying that the first statement was wrong and must be forgotten, *see Francis v. Franklin*, 471 U.S. 307, 322 (1985) (even existence of "contradictory instructions" elsewhere in charge doesn't cure error if contradictory language leaves jurors equally free to apply and follow infirm instruction), and (2) actually sounding like a statement about the law rather than a prediction ("*won't* be any parole" is a forecast; "*can't* be any parole" would be a clear statement of law). The trial court thus did not actually "correct[] itself," as the Commonwealth argues, ECF No. 47

3

at 8, and so did not cure the error.

*Fifth*, the Commonwealth argues that the question whether *Simmons* error can ever be harmless is "settled" by the Fourth Circuit's decision in *Richmond*, 375 F.3d at 334–35, that such error is subject to harmlessness review. ECF No. 47 at 9. This assertion is erroneous. The Fourth Circuit itself acknowledged that there is disagreement on this issue:

> [W]e note that the Tenth Circuit has recently called into question whether a *Simmons* violation is subject to *Brecht*'s harmless error analysis because the Supreme Court has never conducted such an analysis in the three cases where it has found a *Simmons* violation. *Mollett v. Mullin*, 348 F.3d 902, 921 n.6 (10th Cir. 2003) ("It is not entirely clear whether a *Simmons* error is subject to harmless error analysis . . . [given that] the Supreme Court has never performed a harmless error analysis in any of the three cases where the Court found a *Simmons* violation."); *id.* at 925 n.2 (Murphy, J., dissenting) ("In light of the nature of the due process problem identified in *Simmons*, however, it is not surprising that the Court has never subjected such an error to a harmless-error analysis.").

*Richmond*, 375 F.3d at 334.

As Mr. Robinson has already argued, *see* ECF No. 37-1 at 31–36: the Supreme Court of the United States has never applied harmlessness analysis to a *Simmons* claim, directed a lower court to do so, or even suggested that a lower court could do so; the Supreme Court routinely so directs or suggests in instances where harmlessness analysis is or may be appropriate; the Supreme Court of South Carolina does not consider *Simmons* error susceptible to harmlessness analysis; the Arizona Supreme Court acknowledges that it isn't clear whether *Simmons* error can be harmless, and has not applied harmlessness review to *Simmons* errors; and this Court has never subjected *Simmons* error

to harmlessness analysis. In arguing that *Simmons* error should be deemed susceptible to harmlessness review, the Commonwealth points to no decision or court other than the Fourth's Circuit's decision in *Richmond*. The Fourth Circuit is an outlier and its analysis should be rejected. Because *Simmons* error poisons the jury's future-dangerousness assessment and thus raises a serious due process problem, it is structural error to which harmlessness analysis cannot apply.

It is also worth keeping in mind that in the one case the Commonwealth points to for support, *Richmond*, there was no jury question about the meaning of life imprisonment. Even if *Simmons* error is susceptible to harmlessness analysis, neither Mr. Robinson nor the Commonwealth can find a case where *Simmons* error was found harmless in the presence of a jury question about the meaning of a life sentence.

*Sixth*, the Commonwealth argues that "a habeas petition should succeed only when the court is in 'grave doubt' as to the harmlessness of the error"—such doubt existing where "the matter is so evenly balanced that the court feels itself in 'virtual equipo[i]se' regarding the error's harmlessness." ECF No. 47 at 10 (quoting *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002)). For the reasons given, doubt about this error's harmlessness far exceeds virtual equipoise. It is certain that the error was not harmless.

\* \* \* \* \*

For all these reasons and those expressed in the Initial Brief for Appellant, this Court should vacate the district court's denial of the petition for writ of habeas corpus and remand for the grant of relief.

                                            Respectfully submitted,

                                            /s/ Eric Montroy
                                            Eric Montroy
                                            Eric Motylinski
                                            Federal Community Defender Office
                                               for the Eastern District of Pennsylvania
                                            The Curtis, Suite 545 West
                                            601 Walnut Street
                                            Philadelphia, PA  19106
                                            (215) 928–0520

Dated: August 30, 2023                    *Counsel for Appellant Harvey Miguel Robinson*

## CERTIFICATE OF COMPLIANCE

I, Eric Montroy, hereby certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 1405 words, as calculated by the word count software in Word for Microsoft 365, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in size 14 Garamond.

I further certify that the text of the electronic copy of the brief is identical to the text of the paper copies of the brief filed with the Court and that the electronic copy of this brief was scanned using TrendMicro Apex Software and found to contain no known viruses.

/s/ Eric Montroy
Eric Montroy

Dated: August 30, 2023


## CERTIFICATE OF SERVICE

I, Eric Montroy, hereby certify that I have filed electronically the foregoing and served copies upon filing user Heather F. Gallagher, Esq., through the Court's Electronic Case Filing system.

<div style="text-align: right;">
/s/ Eric Montroy  
Eric Montroy
</div>

Dated: August 30, 2023