# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No. **21-9001**

## THIS IS A CAPITAL CASE

HARVEY MIGUEL ROBINSON,

*Appellant,*

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF CORRECTIONS, et al.,

*Appellees.*

_____

## APPELLANT'S PETITION FOR PANEL REHEARING
## OR FOR REHEARING EN BANC

Eric P. Motylinski
Eric J. Montroy
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Suite 545 West—The Curtis
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520
eric_motylinski@fd.org
eric_montroy@fd.org

*Counsel for Appellant Harvey Miguel Robinson*

Dated: May 20, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF COUNSEL UNDER FRAP 35(b)(1) AND LAR 35.1 ................. 1

REASONS TO GRANT REHEARING ........................................................ 1

I.   *The panel erred in failing to conclude that the trial judge never retracted his speculation that the law may change and that* Simmons *and progeny were thus violated* ........................................ 1

II.  *To the extent the panel deferred to the state court, no deference was due, and the panel did not conduct a proper AEDPA analysis because it failed to apply § 2254(d) to the state court's actual reasoning* ............................................................ 7

III. Simmons *and progeny required an instruction here, and* Simmons *error can never be harmless* ................................................................. 8

CONCLUSION ........................................................................................ 11

## TABLE OF AUTHORITIES

**Federal Cases**

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) .......................................................... 10

*Bronshtein v. Horn,*
    No. CIV. A. 99-2186, 2001 WL 767593 (E.D. Pa. July 5, 2001) ................. 9, 10

*Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005) .............................................. 9, 10

*Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263 (3d Cir. 2016) ......................... 8

*Francis v. Franklin*, 471 U.S. 307 (1985) ............................................................. 4

*Kelly v. South Carolina*, 534 U.S. 246 (2002) .............................. 1, 4–5, 7, 9, 10

*Lynch v. Arizona*, 578 U.S. 613 (2016) (per curiam) ....................................... 10

*Mollett v. Mullin*, 348 F.3d 902 (10th Cir. 2003) ............................................. 10

*Shafer v. South Carolina*, 532 U.S. 36 (2001) ................................ 1, 6–7, 8, 9–10

*Simmons v. South Carolina*, 512 U.S. 154 (1994) ......................................... 1, 5, 6

**State Case**

*Commonwealth v. Robinson*, 864 A.2d 460 (Pa. 2004) .................................. 7–8, 9

## STATEMENT OF COUNSEL UNDER FRAP 35(b)(1) AND LAR 35.1

We express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to decisions of the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to the decisions of the Supreme Court in *Simmons v. South Carolina*, 512 U.S. 154 (1994), *Shafer v. South Carolina*, 532 U.S. 36 (2001), and *Kelly v. South Carolina*, 534 U.S. 246 (2002).

## REASONS TO GRANT REHEARING

I.    *The panel erred in failing to conclude that the trial judge never retracted his speculation that the law may change and that* Simmons *and progeny were thus violated.*

"Where the State puts the defendant's future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without possibility of parole, due process entitles the defendant to inform the capital sentencing jury—by either argument or instruction—that he is parole ineligible." *Simmons*, 512 U.S. at 178 (O'Connor, J., concurring).[1] At Harvey Miguel Robinson's trial for first degree murder, the Commonwealth put his future dangerousness in issue by calling him "a territorial predator," "somebody who goes out and commits crimes," and then warning, "*when* he gets out, ladies and gentlemen, watch out." Ex. 1 at 5. The panel correctly held that "the state court's contrary holding was unreasonable," *id.*, but, as explained below, its further

---

[1] Justice O'Connor penned the controlling opinion in *Simmons. Kelly*, 534 U.S. at 262 n.1 (Thomas, J., dissenting).

holding that the Pennsylvania Supreme Court was "reasonable" in holding "that the sentencing judge answered the juror's question properly," *id.* at 4, and thus that the trial court "gave a clear *Simmons* instruction," *id.* at 6, is contrary to *Simmons* and progeny.

Immediately after being charged at the penalty phase, before leaving the courtroom, the jury specifically asked the court about the meaning of a life sentence:

> MR. HAEDRICH: On the life in prison, is that without parole, just so we're sure? Would there be a chance of parole if it was life in prison?
>
> THE COURT: I don't see how I can guarantee—that's the present law. But what if the legislature changes the law? I can't guarantee that. That's the way the law is now.
>
> MR. HAEDRICH: Just so we know, Your Honor.
>
> THE COURT: Who knows two years from now if they'll change the law. I can't tell you.

209a–210a.[2]

The prosecutor immediately asked for a sidebar conference, at which point the judge speculated, "I must have misspoken somewhere." 210a. At sidebar, both the prosecutor and Mr. Robinson's counsel argued to the court that the court's instruction was improper and that the court needed to instruct the jury that "life is life." *Id.* After the sidebar, the court said to the jury, "I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." 211a. The jury then sentenced Mr. Robinson to death.

---

[2] References to the Appendix submitted in this action are cited as ____a.

In *Simmons* and progeny, the need for a *Simmons* instruction arose because the prosecution put future dangerousness in issue. Here, however, not only did the prosecution put future dangerousness in issue, but *the judge himself reinforced the prosecution's evocation of future dangerousness* by speculating that the law might change and allow parole. The panel never confronts this problem, stating instead that it "need not decide whether this speculation violated *Simmons* because the judge promptly fixed it." Ex. 1 at 6. But, as explained below, the judge never "fixed" his speculation, and so this Court must face the problem that the panel sidestepped: injecting, and never clearly retracting, the threat that the law may change runs contrary to *Simmons* and progeny. The Pennsylvania Supreme Court embraced the trial judge's speculation; the panel deflected it. Both decisions run contrary to *Simmons* and progeny. This Court should order rehearing.

In holding that the Pennsylvania Supreme Court's holding that "there was no error in the instruction given by the trial court" "was not just reasonable, but right," Ex. 1 at 3, 4, the panel repeatedly relies on the idea that the trial court "retracted" its speculation about the possibility that the law may change, *id.* at 2, 3, 6. The panel buttresses its reasoning that the trial court's second instruction retracted the first by relying on the court's remark that it "must have misspoken somewhere." *Id.* at 3, 6. But the judge never says anything like, "You must ignore what I just said, which is not a proper instruction. You must not consider the possibility that the law might change. Life imprisonment means life imprisonment without the possibility of parole." No retraction ever occurs. Like his remark that the law may change, his remark that he "must have

misspoken somewhere" is pure speculation (if you find that your wallet is missing and say "I must've left it at home," that is speculation—you might have left it in your car, or a pickpocket may have stolen it, or it may have fallen out of your pocket as you sat down at your desk, and so on; "who knows"?). The state court does not hold that a retraction occurred, and the Commonwealth nowhere argues that "I must have made a mistake somewhere" served as a "retraction." It would be unreasonable to conclude that all twelve jurors believed that any retraction occurred, either.

One natural reading of the transcript is that the jury believed *both* of the judge's statements, because they are *not* inherently contradictory: "Life is life. There won't be any parole" under *current* law, *and* "Who knows two years from now if they'll change the law."[3] Another natural reading is that, taken together, these instructions (with the prefatory "I'm to tell you") say that (a) he was saying "Life is life" only because counsel for both sides were telling him he had to and (b) he was not clearly retracting his speculation that that law could change. The judge was fanning the flames of the jurors' fear, thus sharpening the prosecution's powerful evocation of future dangerousness. It was unreasonable beyond any possibility for fairminded disagreement for the Pennsylvania Supreme Court to say that those instructions provided "a clear understanding of . . .

---

[3] Even if these statements were read to be inherently contradictory, *Simmons* would not be satisfied, because "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis v. Franklin*, 471 U.S. 307, 322 (1985).

parole ineligibility." *Kelly*, 534 U.S. at 257. At that pivotal moment, the error cannot possibly have been harmless (that is, if *Simmons* error could be harmless, which, as explained below, it cannot): the one question on the foreperson's mind after hearing the prosecutor's inflammatory closing, before beginning deliberations—a question there would be no reason to ask were he already certain a death sentence was inevitable—was whether Mr. Robinson could be paroled. The judge effectively told him who knows, he might be.

For the foregoing reasons, the panel's idea that the judge's first statement was ever retracted is an unnatural and unreasonable reading of the transcript. For the reasons that follow, allowing the jury to speculate about, and thus apply, possible future changes in the law runs afoul of *Simmons* and progeny, under which the jury may also be informed, in addition to parole ineligibility, "of any truthful information regarding the availability of commutation, pardon, and the like." *Simmons*, 512 U.S. at 177. The possibility of legislative reform is not "like" commutation or pardon, because it is not existing law; a possible change in the law in the future is not "availab[le]" in the present. Law that does exist is not "like" law that doesn't. Accordingly, the jury may not be instructed that the law may change in the future. The limitation to instruction on "the current state of the law" is further confirmed by Justice Scalia's complaint in his *Simmons* dissent:

> The notion that the South Carolina jury imposed the death penalty "just in case" Simmons might be released on parole seems to me quite farfetched. And the notion that the decision taken on such grounds would

have been altered by information on the *current state of the law* concerning parole (which could of course be amended) is even more farfetched.

*Simmons*, 512 U.S. at 184 (Scalia, J., dissenting) (italics in original).

It makes sense that a *Simmons* instruction must be limited to the current state of the law because the whole point of *Simmons* is that the jury understand that parole is *unavailable* and *shouldn't* be a concern, but if a court can say the law may change, *of course* the jurors will worry about parole, because the judge is saying parole might be available in the future—and *Simmons* becomes meaningless. It's the jury's role to apply *existing* law to the facts. Jurors are supposed to be judges of the facts, not judges of the law. Telling the jury the law could change tells the jurors they can speculate about the law. That leaves the jurors unguided and makes it more likely they'll reach an arbitrary verdict. But *Simmons* says that the jury's moral judgment must be guided by what the law is now ("truthful information regarding the *availability* of commutation, pardon, *and the like*"). A jury instruction is about the law; it's not about politics. The specter that the law may change is a poison in which guided discretion evanesces. To say that the law that is meant to guide the jury is like the freshly fallen snow, it might melt away as soon as the wind changes, creates a terrible risk of an arbitrary verdict, especially in a highly aggravated case like this one, which carries a high risk that the jury will decide based on fear of release and recidivism rather than on a reasoned moral weighing of aggravators and mitigators guided by the law. The jury is effectively choosing between death and life *with* parole, which is the "false choice" that *Simmons* and progeny forbid. *Shafer*, 532

U.S. at 51. Injecting the idea that the law may change is effectively supplying the *opposite* of a *Simmons* instruction. If the jury is applying speculative, counterfactual, imaginary future law where parole is a possibility, the jury has ceased to function as a jury that applies the laws of the Commonwealth. *Simmons* does not allow that—indeed, it is precisely the constitutional danger *Simmons* and progeny were designed to guard against.

Here, after the jury convicted Mr. Robinson of three highly aggravated murders, and immediately after the prosecutor powerfully evoked future dangerousness in his argument, at least one juror was, quite rationally, worried about the possibility of parole. *Simmons* has no meaning if the court can tell those jurors that the law around parole ineligibility may change—a statement that surely "rang in the jurors' ears as they went to deliberate," Ex. 1 at 6—without clearly and affirmatively retracting that statement. But that is exactly what happened here. Under these circumstances, the jurors cannot have had "a clear understanding of . . . parole ineligibility." *Kelly*, 534 U.S. at 257. The panel's contrary conclusion is erroneous under *Simmons* and progeny.

II.    *To the extent the panel deferred to the state court, no deference was due, and the panel did not conduct a proper AEDPA analysis because it failed to apply § 2254(d) to the state court's actual reasoning.*

To the extent that the panel's decision turned on its perception that it must defer to the state court's opinion, *see* Ex. 1 at 4 ("We review deferentially."), no deference was due because the state court unreasonably applied *Simmons* and progeny. The Pennsylvania Supreme Court found "no error" in the trial court's statement that "although the present state of the law does not allow parole in the circumstances at hand, it cannot

predict whether the legislature will decide to change that in the future." *Commonwealth v. Robinson*, 864 A.2d 460, 515 (Pa. 2004); 265a. In effect, the Pennsylvania Supreme Court concluded that it was perfectly all right for the trial court to allow the jury to speculate about (and thus apply) possible future changes in the law. This conclusion was not just wrong, but unreasonable. *See* Section I, *supra*; Initial Brief, Doc. 37-1 at 30.

And, in any event, the panel did not actually defer to (or even acknowledge) the state court's reasoning, instead conducting review based on new reasoning on why it perceived no *Simmons* error, which was never raised or addressed by the state court. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 283 (3d Cir. 2016) ("When the state court pens a clear, reasoned opinion, federal habeas courts may not speculate as to theories that 'could have supported' the state court's decision."); *id.* at 281 ("[F]ederal habeas review does not entail speculating as to what other theories could have supported the state court ruling when reasoning has been provided.").

III.    Simmons *and progeny required an instruction here, and* Simmons *error can never be harmless.*

The following reasons further show why a *Simmons* instruction was necessary here. When such instruction is necessary, its absence can never be harmless.

Defense counsel need not request a *Simmons* instruction: "We . . . hold that *whenever* future dangerousness is at issue in a capital sentencing proceeding . . . , due process requires that the jury be informed that a life sentence carries no possibility of parole." *Shafer*, 532 U.S. at 51 (emphasis added); *see also id.* at 56 ("Now, *whenever* future

dangerousness is placed at issue and the jury's potential sentencing choice is between

life without parole and death, the trial court must instruct the jury on the impossibility

of release . . . .") (Thomas, J., dissenting) (emphasis added); *Kelly*, 534 U.S. at 256 ("A

trial judge's duty is to give instructions sufficient to explain the law . . . ."); *Bronshtein v.

Horn*, No. CIV. A. 99-2186, 2001 WL 767593, at *18 n.23, *21 (E.D. Pa. July 5, 2001)

("[I]t appears the petitioner did not object at trial to the trial court's failure to instruct

the jury that life means life without parole.") ("Bronshtein's attorney never requested a

life-means-life-without-parole instruction."), *aff'd*, *Bronshtein v. Horn*, 404 F.3d 700, 719

(3d Cir. 2005) ("Having considered and rejected the Commonwealth's arguments re-

garding *Simmons* and its progeny, we have before us no ground for reversing the order

of the District Court insofar as it held that Bronshtein's death sentence is unconstitu-

tional under those precedents.") (Alito, J.). The Pennsylvania Supreme Court's holding

that a defendant must "specifically request[]" a *Simmons* instruction, *Robinson*, 864 A.2d

at 515; 265a, is thus contrary to *Shafer* and *Kelly*.

Where, as here, defense counsel's argument at closing that life imprisonment

does not carry the possibility of parole fails to "convey a clear understanding of . . .

parole ineligibility," *Kelly*, 534 U.S. at 257, as evidenced by a later jury question about

the meaning of life imprisonment, further *instruction* from the court is necessary:

"Shafer's jury left no doubt about its failure to gain from defense counsel's closing ar-

gument or the judge's instructions any clear understanding of what a life sentence

means. The jurors sought further *instruction* . . . ." *Shafer*, 532 U.S. at 53 (emphasis

added); *see also Kelly*, 534 U.S. at 257 n.8 ("If Kelly's counsel had read the law verbatim to the jury with the judge's manifest approval, that might have sufficed . . . ."); *id.* at 256 ("A trial judge's duty is to give instructions sufficient to explain the law . . . .").

*Simmons* error can never be harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The Supreme Court did not apply harmless-error review in *Simmons, Shafer* or *Kelly. Mollett v. Mullin*, 348 F.3d 902, 921 (10th Cir. 2003). The Court has since continued to abide by its practice of not engaging in harmless-error analysis for *Simmons* violations. *See Lynch v. Arizona*, 578 U.S. 613, 613–17 (2016) (per curiam) (finding *Simmons* error and not engaging in harmless-error review). And this Court has affirmed a district court's conclusion that "an instructional error" under *Simmons* "is never harmless." *Bronshtein*, 2001 WL 767593, at *21, *aff'd, Bronshtein*, 404 F.3d at 719.

*    *    *    *    *

## CONCLUSION

The Pennsylvania Supreme Court's conclusion that *Simmons* was not violated is due no deference, and the panel's own analysis of the claim runs contrary to *Simmons* and progeny. This Court should vacate the panel's opinion and order rehearing of Mr. Robinson's claim that his Due Process Clause rights under *Simmons* and progeny were violated.

Respectfully submitted,

/s/Eric P. Motylinski
Eric P. Motylinski
Eric J. Montroy
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
Suite 545 West—The Curtis
601 Walnut Street
Philadelphia, PA 19106
(215) 928-0520

Dated: May 20, 2024            *Counsel for Appellant Harvey Miguel Robinson*

## CERTIFICATE OF COMPLIANCE

I, Eric Motylinski, hereby certify that this petition complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A) and 40(b)(1) because this petition contains 2786 words, as calculated by the word-count software in Word for Microsoft 365. I further certify that this petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in fourteen-point Garamond.

I further certify that the text of the electronic copy of this petition was scanned using TrendMicro Apex Software and found to contain no known viruses.

/s/ Eric P. Motylinski
Eric P. Motylinski

Dated: May 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2024, I caused a true and correct copy of the foregoing to be served by the Electronic Case Filing system upon the following individual:

Heather Gallagher
Chief Deputy District Attorney
Lehigh County Office of the District Attorney
455 West Hamilton Street
Allentown, PA 18101

/s/ Eric P. Motylinski
Eric P. Motylinski

# Exhibit 1

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-9001
_____

HARVEY MIGUEL ROBINSON,
Appellant

v.

SECRETARY, PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
SUPERINTENDENT, GREENE SCI;
SUPERINTENDENT, ROCKVIEW SCI
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:06-cv-00829)
District Judge: Honorable Joseph F. Leeson, Jr.
_____

Argued: November 28, 2023

Before: JORDAN, HARDIMAN, and BIBAS, *Circuit Judges*

(Filed: April 4, 2024)
_____

Eric J. Montroy
Eric P. Motylinski                    **[ARGUED]**
FEDERAL COMMUNITY DEFENDER OFFICE
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
      *Counsel for Appellant*

Heather F. Gallagher              **[ARGUED]**
LEHIGH COUNTY DISTRICT ATTORNEY'S OFFICE
455 W. Hamilton Street
Allentown, PA 18101
      *Counsel for Appellees*

———————————

## OPINION OF THE COURT

———————————

BIBAS, *Circuit Judge*.

In weighing life and death, a jury must understand its options. It may not sentence a defendant to die because it falsely fears that he might one day be paroled. If the prosecution raises the specter of the defendant's future dangerousness and clarification is needed, the judge must make sure the jury understands the law.

The judge here did that. Harvey Robinson was not eligible for parole. Yet at his capital sentencing, the judge first speculated that parole law might change. He then retracted that speculation and correctly told the jury: "There won't be any parole. Life is life." Because that correction cured any error, we will affirm the District Court's denial of habeas.

## I. THE MURDER CONVICTION AND DEATH SENTENCE

Three decades ago, Robinson stalked, raped, and killed three women. He also raped another woman and repeatedly tried to kill her. A Pennsylvania jury convicted him of one count of rape and multiple counts of burglary and other crimes, plus three counts of first-degree murder.

For each murder, the prosecution sought the death penalty. To persuade the jury, the prosecution repeatedly warned that Robinson was a dangerous predator who would continue to commit crimes if he ever got out of prison. After hearing these arguments, a juror asked the judge: "On the life in prison, is that without parole, just so we're sure? Would there be a chance of parole if [we sentence Robinson to] life in prison?" App. 209. The judge responded, "that's the present law, [b]ut … the legislature [might] change[] the law." App. 210. After the prosecution asked for a sidebar, the judge realized he "ha[d] misspoken." *Id.* He then changed his instruction to retract his prior speculation: "I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." App. 211. The jury then sentenced Robinson to death.

On appeal, the Pennsylvania Supreme Court affirmed. *Commonwealth v. Robinson*, 864 A.2d 460, 520 (Pa. 2004). It held that (1) the prosecution had not made an issue of Robinson's future dangerousness; and (2) in any event, there was no error in the instruction given by the trial court. *See id.* at 515–16. State courts then denied him collateral relief, as did the federal district court. *Commonwealth v. Robinson*, 82 A.3d 998, 1000 (Pa. 2013); App. 3, 22. We granted him a certificate of appealability to consider whether the trial court's

3

instructions on parole ineligibility violated *Simmons v. South Carolina*, 512 U.S. 154 (1994).

We review deferentially. Because no facts are disputed, we can grant habeas only if the Pennsylvania Supreme Court's ruling on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). It was not. The state court's second rationale—that the sentencing judge answered the juror's question properly—was not just reasonable, but right.

## II. THE JURY INSTRUCTIONS SATISFIED *SIMMONS*

Jurors sometimes sentence defendants to death out of fear for public safety. And prosecutors sometimes play on this fear by emphasizing a defendant's dangerousness. A defendant's best response may be that he will never get out of prison. *Simmons*, 512 U.S. at 163–64 (plurality opinion); *see id.* at 176 (O'Connor, J., concurring in the judgment). So when a prosecutor suggests that a capital defendant will be dangerous, "due process entitles the defendant to inform the jury of his parole ineligibility." *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (cleaned up). Either the judge or defense counsel must then tell the jury that the defendant is not eligible for parole, despite the prosecution's contrary suggestion. *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment).

Robinson would not have been eligible for parole. And though the prosecution did argue that he was dangerous, the judge instructed the jury that he was not eligible for parole. That was enough.

## A. The prosecution put future dangerousness at issue

The prosecution raised "the clear implication of future dangerousness … and placed the case within the four corners of *Simmons*." *Kelly v. South Carolina*, 534 U.S. 246, 255 (2002). First, it called Robinson "a territorial predator," "somebody who goes out and commits crimes." App. 136, 179. Then it went further, warning: "*when* he gets out, ladies and gentlemen, watch out." App. 179 (emphasis added). That statement implied not only that he *could* get out, but that he *would*. Any one of these statements could have triggered a *Simmons* instruction. Collectively, they certainly do. So on this point, the state court's contrary holding was unreasonable under any standard.

## B. The court explained that Robinson could not get parole

But the Pennsylvania Supreme Court got the other merits issue right. An effective *Simmons* instruction must clarify that the defendant cannot get parole. *Simmons*, 512 U.S. at 177–78 (O'Connor, J., concurring in the judgment). It is not enough to say that the defendant will "die in prison after spending his natural life there" or that "life imprisonment means until the death of the defendant." *Kelly*, 534 U.S. at 257 (cleaned up) (quoting *Shafer*, 532 U.S. at 52). True, the jury may hear "truthful information regarding the availability of commutation, pardon, and the like." *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment). Yet it must also hear that, apart from those exceptions, the defendant will not be eligible for parole, at least under current law. *Id.* at 178.

Here, both sides agree that the judge's first statement was problematic. When asked about parole, he speculated about possible changes to the law, suggesting that the law was

unsettled. Even if that speculation did not violate *Simmons*, the wiser course would have been to state current law without speculating.

But we need not decide whether this speculation violated *Simmons* because the judge promptly fixed it. After the prosecution objected, the judge stated, "I must have misspoken somewhere." App. 210. And after the sidebar, he told the jury, "I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." App. 211. That answer cleared up any doubt. These final words rang in the jurors' ears as they went to deliberate. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow [the court's] instructions … [and] to understand a judge's answer to its question." (citation omitted)). So even if the judge's first statement was wrong, he quickly retracted it, curing any error. Thus, under any standard of review, the Pennsylvania Supreme Court properly rejected Robinson's claim.

\* \* \* \* \*

When the prosecution indicates that a capital defendant who is ineligible for parole will be dangerous to society, the defendant has a right to inform the jury of the law. The trial judge did that: He retracted his speculation and gave a clear *Simmons* instruction. Because there was ultimately no error, we will affirm the District Court's denial of habeas corpus.